IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARYELLEN BOGDAN       :         CIVIL ACTION
                   :
    v.               :
                   :
JO ANNE B. BARNHART,    :         NO. 04-3702
Commissioner of          :
Social Security          :

**REPORT AND RECOMMENDATION**

THOMAS J. RUETER                        June     , 2005
United States Magistrate Judge

          Plaintiff, Maryellen Bogdan, filed this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the final decision of the Commissioner of the Social Security

Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB")

under Title II of the Social Security Act ("Act").

          Each party filed a motion for summary judgment.  For the reasons set forth below,

this court recommends that plaintiff's motion for summary judgment be denied, and the

Commissioner's motion for summary judgment be granted.

**I.**      **FACTUAL AND PROCEDURAL HISTORY**

          Plaintiff filed an application for DIB alleging disability since September 12, 2001,

due to "disc problems in lower back and neck, diabetes."  (R. 68-79.)  The claim was denied, and

a request for a hearing was timely filed.  A hearing was held on September 16, 2003 before

Administrative Law Judge ("ALJ") Edward Morriss.  (R. 4-8, 20-45.)  In a decision dated

October 29, 2003, the ALJ found that plaintiff was not disabled under the Act.  (R. 12-18.)

          The ALJ made the following findings:

1.      The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.      The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.      The claimant has an impairment or combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4.      These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.      I find the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.      I have carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7.      The claimant retained the residual functional capacity to lift and carry 10 pounds frequently and 20 pounds occasionally, sit for about 6 hours in an 8-hour workday, stand and walk for about 6 hours in an 8-hour workday, and push and pull as much as she can lift and carry.  In addition, the claimant has a mild to moderate limitation in concentration and attention due to pain.

8.      The claimant's past work as an office helper did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565 and 416.965).

9.      The claimant's medically determinable impairments do not prevent the claimant from performing her past relevant work.

10.     The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision  (20 CFR §§ 404.1564 and 416.920(e)).

(R. 17-18.)

        Plaintiff filed a request for review of the decision of the ALJ which was denied by the Appeals Council on June 4, 2004.  (R. 4-5.)  The ALJ's decision became the final decision of the Commissioner.  Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42

U.S.C. § 405(g).

## II.   <u>STANDARD OF REVIEW</u>

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision.  <u>Jesurum v. Sec'y of United States Dep't of Health and Human Serv.</u>, 48 F.3d 114, 117 (3d Cir. 1995).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate."  <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).  Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence.  <u>Jesurum</u>, 48 F.3d at 117.  This court may not weigh evidence or substitute its conclusions for those of the fact-finder.  <u>Burns v. Barnhart</u>, 312 F.3d 113, 118 (3d Cir. 2002) (citing <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992), <u>cert. denied</u>, 507 U.S. 924 (1993)).  As the Third Circuit stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings."  <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1191 (3d Cir. 1986), <u>cert. denied</u>, 482 U.S. 905 (1987).

To be eligible for DIB, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment.  42 U.S.C. § 423(d)(5).  A claimant satisfies this burden by showing an inability to return to former work.  Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979).  Once this standard is met, the burden of proof shifts to the Commissioner to show that given the claimant's age, education, and work experience the claimant has the ability to perform specific jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f).

The Commissioner decided this matter by utilizing the five step sequential evaluation process established by the Department of Health and Human Services to determine whether a person is "disabled."  This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience.  20 C.F.R. § 404.1520.

III.  **BACKGROUND**

A.  **Testimony of Plaintiff**

Plaintiff, represented by counsel, appeared and testified at the administrative hearing.  (R. 22-44.)  Plaintiff was fifty-nine years old at the time of the hearing.  (R. 24.)  She completed the ninth grade.  Id.  Plaintiff testified that due to her herniated disc, she had difficulty sitting for long periods of time, could walk only ten minutes at a time, and experienced numbness in her legs.  (R. 28-30.)  Her condition caused pain which was "excruciating" during a "flare up."  The pain also caused sleeplessness.  (R. 30-31.)  Plaintiff took Motrin, Ultram and Skelaxin to

4

treat her back condition.  She took medication only when she was "really, really bad."[1]  (R. 28-29.)  Plaintiff experienced no side-effects from her medication.  (R. 31.)  Plaintiff's diabetes was controlled by medication.  Id.

With regard to her daily activities, plaintiff prepared simple meals, did some light housework, washed her clothes at a laundromat, and shopped for groceries.[2]  (R. 23-25.)  Plaintiff watched television, but did not read because her diabetes caused blurry vision and because she "never liked reading anyhow."  (R. 26.)

Plaintiff was last employed as an office worker, a position she held for approximately three and one-half years.[3]  Plaintiff 's employment was terminated in September 2001, because her position was eliminated.  (R. 26-27.)  Plaintiff expressed willingness to find a similar job, but had doubts about whether she could physically perform the duties of a position due to her physical and mental impairments.  (R. 29-30.)  She estimated that she could stand for only ten minutes; after that time, her legs became "numb and like icy cold and hot at the same time.  Then I have to sit."[4]  (R. 35.)

In response to questioning by her attorney, plaintiff explained that she had experienced problems performing the duties of her office position.  According to plaintiff, the

---

[1]      Plaintiff experienced radicular pain every day.  (R. 36.)

[2]      Plaintiff's son assisted her at the laundromat and occasionally helped with housework.  (R. 34.)

[3]      She had prior experience as a warehouse marker, a position which required frequent heavy lifting.  (R. 27.)

[4]      Plaintiff estimated that she would need to sit for approximately one-half hour to relieve the symptoms caused by standing in excess of ten minutes.  (R. 35.)

5

baskets of mail she carried were very heavy, and she had to "reach up higher than what [I] could."[5]  (R. 32.)  Plaintiff added that after she was terminated from her position, her pain increased and she became less active.  (R. 33.)

Plaintiff was hospitalized prior to the administrative hearing due to an overdose of sleeping pills.  (R. 37-38.)  She took the pills because she was depressed about her son and her employment situation.  (R. 38.)  She received treatment for depression after her release from the hospital.  (R. 39.)

**B.**     **Testimony of Vocational Expert Andrew Caporale, September 16, 2003**

Vocational Expert ("VE"), Andrew Caporale, characterized plaintiff's office position as an "office helper," an unskilled job customarily performed at the light exertional level.  (R. 42.)  He opined that her warehouse position was an unskilled job customarily performed at the medium exertional level.  Id.

For purposes of hypothetical analysis, the ALJ asked the VE to assume that an individual was fifty-nine years old, with a ninth grade education.  In addition, the individual could perform light work with mild to moderate limitations in concentration and attention due to pain.  The VE opined that such an individual could perform the job of office helper.  (R. 43.) The VE acknowledged that a hypothetical claimant with the aforementioned limitations, coupled with the need to take unscheduled breaks for two hours each day, would be unable to perform the

---

[5]     At the time she performed the office position, plaintiff had a lifting restriction of twenty pounds.  During the hearing, plaintiff explained that she experienced pain when lifting only a five-pound bag of potatoes.  (R. 33.)  In her work history report, plaintiff indicated that the heaviest weight she lifted in the office helper position was twenty pounds.  Her job included sitting for eight hours.  In addition, she stapled, prepped invoices, opened mail and periodically carried baskets with invoices a "few feet."  (R. 91.)

duties of office helper.  Id.

**C.    Medical Evidence**

Eric Holm, M.D., treated plaintiff for a work-related injury.  Plaintiff saw Dr. Holm approximately every six months.  (R. 117.)  As of May 1998, Dr. Holm allowed plaintiff to perform light level work.[6]  (R. 166.)  In July 1998, Dr.  Holm advised plaintiff that it was reasonable for her to continue to perform the duties of light work.  (R. 164.)  In October 1998, Dr. Holm noted that plaintiff's condition remained stable with no signs of worsening.  Her reflexes and strength remained intact, and straight leg raising produced no pain.  Dr. Holm indicated that plaintiff could not perform heavy lifting.  (R. 161.)

In January 1999, Dr. Holm reported that plaintiff's condition remained stable:  her reflexes were good, her strength was intact and leg raising caused no pain.  (R. 162.)  Dr. Holm also noted that plaintiff was pleased with her job, and felt she could contribute positively to her company while employed in that position.  Id.  In August 1999, Dr. Holm reiterated his January findings and added that he "encouraged [plaintiff] to maintain her work productivity and hopefully everyone will be pleased and keep her as a contributing member of society."  (R. 160.)  In February 2000, Dr. Holm indicated that neurosurgically, plaintiff was "good and stable without signs of worsening."  (R. 153.)  Plaintiff reported that things were going well at work and she was able to keep up with her assignments.  Dr. Holm indicated that plaintiff's medication was working, and instructed plaintiff to return in six months.  Id.  In August 2000, Dr. Holm

---

[6]    Dr. Holm reported the following: "I also advised I had a job description for light duty work which didn't sound too terrible.  I advised her I was very comfortable permitting her to do that and she was comfortable accepting it so I gave her a slip saying she could return to light duty work as of 05/13/98." (R. 166.)

related that plaintiff's reflexes, strength and sensation were intact.  Once again, plaintiff reported

that her employer was pleased with her production level, and she desired to continue in her

position.  (R. 154.)

In February 2001, Dr. Holm reiterated that plaintiff was well neurosurgically.  He

added that plaintiff continued to be productive at work and was pleased with her situation.  Dr.

Holm instructed plaintiff to return in six months.  (R. 147.)  On August 27, 2001, plaintiff's

reflexes were good and her strength and sensation were intact.  (R. 143.)  Plaintiff reported to Dr.

Holm that she remained productive at her job at Boscov's.[7]  Plaintiff explained that occasionally

her spine bothered her but this discomfort was alleviated by a change in position.  Dr. Holm

opined that plaintiff should consider remaining at her position.[8]  Id.

In February 2002, Dr. Holm treated plaintiff for complaints of shoulder pain

which had begun in December 2001.  This pain resolved with heat, Ultram and Motrin after

approximately one week, but recurred in February.  (R. 136.)  Plaintiff's physical examination

revealed normal reflexes, adequate strength with some pain, and intact and symmetrical

sensation.  Id.  An x-ray taken in March 2002 showed only "minimal right shoulder osteoarthritic

changes."  (R. 135.)

In August 2002, Dr. Holm related that plaintiff had informed his office that she

was terminated from her position at Boscov's in September of 2001.  (R. 134.)  Dr. Holm related

---

[7]    Plaintiff reported that she was able to perform all functions of her light duty
position prior to her termination from Boscov's in September 2001.  Plaintiff could stand, sit and
walk as required.  (R. 116.)

[8]    Plaintiff advised Dr. Holm that she had consulted with Dr. Close, and this
physician felt her restrictions were appropriate.  (R. 143.)

that plaintiff had no health insurance, and he advised her to "go to medical assistance and certainly I'm happy supporting the fact that she is disabled and unable to work and is deserving of health insurance to check out why she is miserable as she is.  In the meantime, she'll persevere." Id.

In a February 2003 letter, Dr. Holm reported that during an examination, plaintiff's reflexes were satisfactory, her strength was intact and her straight leg raising test produced no pain.  (R. 283.)  Despite these findings, plaintiff complained of pain and occasional numbness in her legs upon prolonged standing.  Medication alleviated plaintiff's arm and shoulder pain, but did not totally relieve the pain.  Id.  Dr. Holm related the following:

> Overall at this stage I advised her that I'm comfortable letting her be as active as she can tolerate within her limits of pain.  I know she can't do heavy work. Whether she can find some type of sedentary employment or not I don't know. Officially I will see her back in the office in 6 months barring any worsening.

(R. 283.)

On February 24, 2003, Harold Einsig, M.D., evaluated plaintiff at the behest of the Commissioner.  (R. 214-17.)  Dr. Einsig reported that plaintiff was in no acute distress, was capable of heel-walking and toe-walking, and had mild impingement in the left shoulder.  Dr. Einsig also found that plaintiff had intact motor function of the upper and lower extremities, a normal sensory examination, negative bilateral straight leg raising, no significant atrophy of the lower extremities, and no true radicular symptoms.  Id.  Notwithstanding these findings, in a Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities, Dr. Einsig found that plaintiff was capable of lifting and carrying ten pounds occasionally, standing and walking for a total of three hours in an eight-hour day, and sitting for eight hours in an eight-hour day, alternating positions every half hour.  (R. 221-23.)  Dr. Einsig found that

plaintiff could occasionally bend, stoop and balance, but should avoid overhead reaching with

her left arm, kneeling, crouching, balancing and temperature extremes and wetness.  Dr. Einsig

did not list any supportive medical findings on this form.  Id.  X-rays of plaintiff's spine taken on

February 25, 2003 showed only "mild multilevel mid-distal lumbar anterior degenerative change;

mild L5-S1 facet degenerative change."  (R. 218.)

IV.   **DISCUSSION**

Plaintiff presently argues that substantial evidence does not support the ALJ's

finding that plaintiff retained the RFC to perform her past relevant work as an office helper.

(Pl.'s Br. Supp. Summ. J. at 4-7.)  Plaintiff asserts that her subjective complaints regarding her

ability to perform work were supported by medical evidence and do not support a residual

functional capacity necessary to perform the physical demands of her past light level work [9]

Defendant maintains that substantial evidence supports the decision of the ALJ.  (Def.'s Br.

Supp. Summ. J. at 7-16.)

In the case sub judice, the ALJ determined at step four of the sequential inquiry

that plaintiff retained the RFC to perform her past relevant work.[10]  Plaintiff bears the burden of

demonstrating her inability to return to her past work, and if this burden is not met, her claim is

denied.  Newell v. Comm. of Soc. Sec., 347 F.3d 541, 546-47 (3d Cir. 2003).  In order to meet

this burden, plaintiff must prove not only an inability to perform a specific past job, or some task

---

[9]      Plaintiff's mental impairments are not at issue in this case.  Plaintiff concedes that
her depression is not alleged as a disabling factor.  (Pl.'s Br. Supp. Summ. J. at 4, n.1.)

[10]      Residual functional capacity is what a claimant can do despite physical and mental
limitations.  20 C.F.R. § 404.1545.  The ALJ bears the responsibility for determining an
individual's RFC.  20 C.F.R. § 404.1546.

required by a particular past job.  She also must show that she is incapable of performing that kind of job as it is performed in the national economy.  20 C.F.R. § 404.1560; Social Security Ruling 82-61.  The ALJ considered plaintiff's symptoms and the extent to which they were supported by the medical evidence.  The ALJ set forth medical evidence which supported his determination that plaintiff's impairments did not support the debilitating symptoms alleged by plaintiff.  The ALJ noted that medical examinations performed by Dr. Holm, plaintiff's treating physician, consistently revealed that plaintiff had no gait disturbances, and demonstrated normal reflexes, strength and sensation to pain.[11]  (R. 14-15, 134.)  Moreover, a March 2002 radiology report revealed only minimal osteoarthritic changes.  (R. 14, 135.)  In addition, the report prepared by Dr. Einsig indicated that plaintiff was in no acute distress and an examination yielded essentially normal results.  (R. 15, 214-23.)  X-rays of plaintiff's spine taken on February 25, 2003, showed only "mild multilevel mid-distal lumbar anterior degenerative change; mild L5-S1 facet degenerative change."  (R. 218.)

       Plaintiff's ability to perform her past work also was supported by the testimony of

---

[11]    Notably, the record demonstrated that Dr. Holm consistently indicated that plaintiff could perform the light level duties of her office helper position prior to her layoff despite her medical condition.  (R. 143, 147, 153, 154, 160, 162.)  Moreover, Dr. Holm's reports revealed no deterioration of plaintiff's condition subsequent to this period, despite plaintiff's contention that her symptoms exacerbated after she was laid off from her position as office helper.  Plaintiff's testimony at a Worker's Compensation deposition also supports the ALJ's finding that plaintiff was able to perform the duties of light work despite her condition.  Plaintiff acknowledged that prior to her layoff due to a slow down at Boscov's, she was capable of performing the duties associated with her position.  (R. 124-26.)  As our Court of Appeals held, "we believe it is highly suspect that [claimant's] severe pain coincided so conveniently with the closing of . . . [claimant's] business."  Hur v. Barnhart, 94 Fed. Appx. 130, 134, 2004 WL 817359, at *3 (3d Cir. Apr. 16, 2004)(not precedential).  Similarly, plaintiff's limitations allegedly became debilitating the day after she was terminated from Boscov's due to a reduction in force.

the VE.  In his hypothetical to the VE, the ALJ asked whether a fifty- nine year old individual

with a ninth grade education could perform the job of office helper as the job was performed in

the national economy.  (R. 43.)  The VE opined that plaintiff's past work as an office helper was

generally performed at the light, unskilled level, and an individual with the limitations set forth

by the ALJ could perform the duties of this job.  Id.

       Plaintiff contends that the ALJ applied the wrong standard of law to plaintiff's

case, since the opinion of the ALJ lists plaintiff's age as forty-nine.  (Pl.'s Br. Supp. Summ. J. 3-

4, 7.)  Plaintiff argues that such error warrants reversal of the decision of the ALJ.  Id.

Defendant correctly points out, however, that this is a step four case, and plaintiff's age is not

relevant to whether plaintiff can perform her past relevant work.  Social Security Regulation 20

C.F.R. § 404.1560(3) states, in pertinent part:

> If we find that you have the residual functional capacity to do your past relevant
> work, we will determine that you can still do your past relevant work and are not
> disabled.  We will not consider your vocational factors of age, education, and
> work experience or whether your past relevant work exists in significant numbers
> in the national economy.

Moreover, as the record clearly demonstrated, the ALJ included plaintiff's correct age of fifty-

nine in his hypothetical to the VE.  (R. 43.)  Thus, this court finds that the age listed in the

decision of ALJ was harmless error, and as such, does not warrant reversal of the decision of the

Commissioner.

       Finally, plaintiff alleges that the ALJ did not set forth sufficient reasons for

discounting medical evidence which supported her claim of disability.  (Pl.'s Br. Supp. Summ. J.

at 3-7.)  Plaintiff avers that the opinion of Dr. Holm that plaintiff was disabled was

uncontroverted, and as such, could not be discounted by the ALJ.  Id. at 4-6.  Plaintiff furthers

argues that the ALJ also failed to properly credit the opinion of Dr. Einsig, a consultative examiner.  Id at 4-5.

A treating physician's opinion as to disability is not dispositive.  See Adorno v. Shalala, 40 F.3d 43, 47-48 (3d. Cir. 1994).  Rather, the Commissioner reserves the ability to determine disability under the Act.  20 C.F.R. § 404.1527(e)(1).  A treating physician's opinion is entitled to controlling weight if it is consistent with other substantial evidence in the record and is supported by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1527(d)(2).  If substantial evidence in the record supports a conclusion contrary to that of the treating physician, however, the ALJ may reject the treating physician's findings.  Frankenfeld v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988).

"An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)).  When rejecting a treating physician's opinion, "an ALJ may not make speculative inferences from medical reports," and may reject the opinion "outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (internal quotes and citations omitted); see also Plummer, 186 F.3d at 429.  "[T]he ALJ must weigh the relative worth of a treating physician's report against the reports submitted by other physicians who have examined the claimant."  Adorno, 40 F.3d at 48.  See Morales, 225 F.3d at 317 (explaining that the ALJ can choose whom to credit but cannot reject evidence for no reason or for the wrong

13

reason).

Substantial evidence in the record supports the ALJ's decision to afford less than controlling weight to the opinion of Dr. Holm that plaintiff was disabled.  The ALJ indicated that Dr. Holm's examinations of plaintiff yielded essentially normal results.  (R. 14-15.)  Prior to plaintiff's layoff in September 2001, Dr. Holm repeatedly opined that plaintiff was capable of performing the duties of her office helper position.  (R. 143, 147, 153, 154, 160, 162.)  Additionally, bi-annual evaluations performed in 2002 records revealed that plaintiff had normal reflexes, adequate strength, symmetrical sensation to pain and no gait disturbances.  (R. 14, 134, 136.)  Objective medical tests also support the findings of the ALJ.  X-rays revealed only minimal right shoulder ostreoarthritic changes.  Id.  X-rays of plaintiff's spine taken on February 25, 2003, showed only "mild multilevel mid-distal lumbar anterior degenerative change; mild L5-S1 facet degenerative change."  (R. 218.)  The ALJ noted that this evidence was contrary to Dr. Holm's opinion of August 2002.  (R. 14.)

The ALJ provided an additional reason for discounting Dr. Holm's opinion that plaintiff was disabled.  The ALJ stated that "the opinion appears to have been made for the purpose of obtaining medical assistance and is not supported by an assessment of specific functional restrictions."  (R. 16.)  In deciding the weight to accord a physician's opinion, the ALJ may consider inconsistencies between the physician's treatment notes and his opinion regarding disability.  Hagner v. Barnhart, 57 Fed. Appx. 981, 983, 2003 WL 294493, at *1 (3d Cir. Feb. 12, 2003) (not precedential).  As illustrated above, the ALJ identified the inconsistencies between Dr. Holm's examination results and his opinion regarding plaintiff's ability to work.  Because the record does not support Dr. Holm's opinion that plaintiff was disabled, the ALJ afforded his

opinion less than controlling weight.

The reasons set forth above also serve as substantial evidence to discount the opinion of Dr. Einsig. As noted above, examinations performed by Dr. Holm yielded essentially normal results, as did objective testing. Dr. Holm repeatedly opined that plaintiff could perform the duties of office helper. Moreover, plaintiff performed these duties, despite her alleged impairments, until the time of her lay off. Dr. Einsig's own examination was inconsistent with his conclusion that plaintiff could lift only two to three pounds consistently. In a report documenting his examination, Dr. Einsig reported that plaintiff's upper extremity functioning was "grossly intact" and showed no significant atrophy. (R. 216.) Moreover, plaintiff testified during her Worker's Compensation hearing that she was able to lift ten pounds with either arm.[12] (R. 120.)

For all of the reasons forth above, the court concludes that the ALJ properly considered and weighed the evidence of record and substantial evidence supports the conclusions of the ALJ.

## V.   CONCLUSION

As stated above, the issue before the court is whether there is substantial evidence to support the ALJ's decision to deny benefits, "not whether a different conclusion might have been reached, or even whether a contrary result might be decidedly more reasonable." Czejak v. Sullivan, 1989 WL 108263, at *1 (E.D. Pa. Sept. 19, 1989). For all the above reasons, the court finds that there is substantial evidence to support the ALJ's finding that plaintiff was not disabled

---

[12]   In addition, functional limitations listed on Dr. Einsig's form are irrelevant to plaintiff's ability to perform her prior work, as plaintiff indicated that duties such as reaching and other postural limitations were not required in her position. (R. 91, 222.)

under the Act.  Accordingly, the court makes the following:

## R E C O M M E N D A T I O N

AND NOW, this      day of June, 2005, upon consideration of plaintiff's motion for summary judgment and defendant's motion for summary judgment, it is respectfully recommended that plaintiff's motion for summary judgment be DENIED and defendant's motion for summary judgment be GRANTED.

BY THE COURT:

_____
THOMAS J. RUETER
United States Magistrate Judge

16